**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA**

| | |
|---|---|
| **SHATAY ADAMS,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **Case No. _____** |
| | ) **Jury Request** |
| **COMMUNITY LOANS OF AMERICA,** | ) |
| **INC. doing business as ALABAMA** | ) |
| **TITLE LOANS, INC.** | ) |
| | ) |
| **Defendant.** | ) |

## COMPLAINT

Plaintiff Shatay Adams ("Plaintiff" or "Adams") hereby files this Complaint against Defendant Community Loans of America, Inc. doing business("Defendant" or "CLA") and alleges as follows:

### I.   INTRODUCTION

1. Ms. Adams brings this case against her former employer, CLA, for violations of the Age Discrimination Act, the ADA, and for retaliating against her for participating in opposing unlawful discrimination of terminating a co-worker based on her disability and reporting discrimination herself. She also brings claims for violations of the FMLA when the Defendant interfered with her taking FMLA and terminated her in retaliation for seeking FMLA.

## II.   **PARTIES**

2.  Plaintiff Shatay Adams is over the age of nineteen (19) and resides within this jurisdiction.

3.  Defendant Community Loans of America doing business as Alabama Title Loans is a corporation doing business within this jurisdiction with over 50 employees.

## III.   **JURISDICTION AND VENUE**

3.  This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, as this case involves federal questions under the Americans with Disabilities Act (ADA), Title VII, the Family and Medical Leave Act (FMLA), and the Age Discrimination in Employment Act (ADEA).

4.  Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to these claims occurred in this district.

## IV.   **ADMINISTRATIVE PROCEDURES**

5.  Ms. Adams timely filed a charge of discrimination within 180 days of the last date of discrimination as she filed her charge on June 1, 2024, alleging Age Discrimination, Disability Discrimination and retaliation[1]. (Exhibit A).

---

[1] Ms. Adams is timely filing another charge with the EEOC to include additional allegations of violations of Title VII, the ADA, the Age Discrimination Act and retaliation out of an abundance of caution to ensure all of her allegations have been thoroughly investigated. Ms. Adams intends to supplement this Complaint to include the second Right to Sue.

6. The EEOC issued Ms. Adams a Notice of Right to Sue on June 18, 2024. (Exhibit B).

7. Ms. Adams has timely filed this action within 90 days of receiving the Notice of Right to Sue.

## V.    FACTUAL ALLEGATIONS

8. Ms. Adams is 49 years old.

9. Ms. Adams is female.

10. Ms. Adams suffers from depression which affects her daily life activities of concentration, difficulty sleeping, and causes decreases in appetite and fatigue.

11. Ms. Adams began working for Defendant in April 2017 as a Branch Manager.

12. Ms. Adams worked more than 1250 hours the year preceding her request for or FMLA.

13. Ms. Adams' employee, a sales representative, had suffered a stroke causing her to be disabled and affected her speed of cognitive functioning which affected her work by slowing down her performance.

14. In March of 2024, Ms. Adams was written up because her office was "dirty" and statements being missing which was false.

15. The statements that were alleged to be missing were old inactive files that Ms. Adams had removed from the active folders cabinet.

16. Ms. Adams had placed the removed folders in the paid-out drawer where they belonged.

17. In March 2024, there was an incident when Ms. Adams called her manager Ms. Powell, and she did not answer.

18. Ms. Adams called another manager, David Nettles (early 30's) and asked him if he had spoken to Ms. Powell.

19. David Nettles confirmed he had spoken to Ms. Powell.

20. Ms. Adams asked David Nettles to call Ms. Powell and ask her a question for her.

21. David Nettles called Ms. Powell, and she answered the phone immediately.

22. It was clear Ms. Powell was avoiding contact with  Ms. Adams.

23. Later in March 2024, Ms. Adams was placed on a Performance Improvement Plan (PIP).

24. The reasoning for the PIP was that Ms. Adams had not hit her targets in January, February, and March 2024.

25. But Ms. Adams had reviewed daily operational reports and received emails from both her co-worker Lafesha Pope, and her manager Stephanie Powell which indicated she had hit her monthly targets in January and February.

26. Ms. Adams never received notice regarding March from Ms. Powell.

27.  After receiving this PIP, Ms. Adams hit her targets for April and May.

28.  In March 2024, Ms. Adams reached out to HR CJ Easterling to inquire about how to take FMLA for her depression and explained to her what was going on.

29. Ms. Adams explained to HR it was because of Ms. Powell's treatment of her which included her writing her up for false reasons and putting her on a PIP for false reasons.

30. In May 2024, Ms. Powell came to the office give Ms. Adams' Sales Representative, a PIP based on the first quarter performance – not hitting targets.

31. While Ms. Powell was at the office, Ms. Adams got up to retrieve something from printer when her knee popped.

32. Ms. Powell said, " is that your knee? That comes with old age."

33. Ms. Adams told her that she was not old.

34. Ms. Powell responded asking how old Ms. Adams was.

35. Ms. Adams explained to Ms. Powell that she was 49 years old.

36. Ms. Powell said, "You are old, that explains why it takes you two hours to complete a title loan".

37. Ms. Powell said we "need to get your loans done faster".

38. Ms. Adams explained  the reason she took the time to complete the loans was because they must verify the references, and sometimes the references don't answer immediately.

39. Then Ms. Powell and Ms. Adams discussed Ms. Adams' employee, the sales representative.

40. Ms. Adams explained the sales representative had a stroke and that was why she was slower.

41. Ms. Adams explained she needed more time to perform her work.

42. Ms. Powell responded, "well she has to go, sometimes you need make the environment uncomfortable for a person to leave."

43. Ms. Powell was upset Ms. Adams was standing up for the sales representative and was requesting additional time for her to complete her loans.

44. Ms. Powell stated she knew Ms. Adams and the sales representative were friends and knew Ms. Adams was not going to fire her, but she was hurting Ms. Adams more than she was helping Ms. Adams and she needed to let her go.

45. Ms. Adams told Ms. Powell that she was not going to fire her.

46. This upset Ms. Powell even more that Ms. Adams would not support her request to unlawfully terminate the sales representative based on her disabling conditions caused by her stroke.

47. After Ms. Adams supported the sales representative's need for accommodations and discussed her own age with Ms. Powell, she started to make the environment very uncomfortable.

48. Ms. Powell would not provide help with anything, she would not answer telephone calls, she would not respond to texts, if Ms. Adams did get her on the phone she would hang up in her face.

49. Other times Ms. Powell would come to Ms. Adams' office and sit all day when she would not go to other offices to watch what they are doing.

50. Ms. Powell heightened her scrutiny of Ms. Adams operations.

51. Ms. Powell never did this before.

52. Ms. Powell began to nitpick everything Ms. Adams did.

53. Ms. Powell's behavior was 10 times worse than it was when Ms. Adams first requested FMLA due to her behavior.

54. Because of Ms. Powell's treatment of Ms. Adams, on or about June 1, 2024, she filed an Age Discrimination and Retaliation charge with the EEOC.

55. On or about June 4, 2024, Ms. Adams submitted a letter to the corporate compliance attorney Brandon Cordell alleging Age Discrimination, Retaliation, and the above-stated facts.

56. Ms. Adams explained to the compliance attorney Brandon Cordell she suffered from depression and that she would like to go out on FMLA due to Ms. Powell's actions.

57. Ms. Adams also reached out to HR, CJ Easterling and asked what were the steps for taking FMLA leave, and what did she need to do.

58. Later that same day, June 4, 2024, Ms. Adams was terminated.

59. The "reason" for my termination was that she e-signed a document which was false.

60. Ms. Adams did not e-sign the document.

61. A customer paid over the phone, so she sent the customer the documents to e-sign.

62. Ms. Adams was was waiting for the customer to come to the office to activate it so she could give her the money as was normal procedure.

63. Ms. Powell approached Ms. Adams in a very hostile manner, raising her voice and accused her of e-signing the document for the customer.

64. Ms. Adams told Ms. Powell she did not have to raise her voice at her, and explained she did not e-sign the document.

65. Ms. Adams also told Ms. Powell that she was accusing her of doing something everyone has done, including Ms. Powell herself.

66. Ms. Powell went into her office and came back out and terminated Ms. Adams.

67. Ms. Adams was on the phone with Lafesha Pope throughout this incident and she heard the entire thing.

68. This "reason" was fabricated because Ms. Adams had just complained that morning to corporate, and Ms. Adams had just filed an EEOC Charge 3 days prior.

VI.    **CAUSES OF ACTION**

**COUNTS I AND II: VIOLATIONS OF THE FMLA INTERFERENCE AND RETALITION**

69.  Plaintiff incorporates by reference all preceding paragraphs.

70.  Ms. Adams was an eligible employee as provided by the FMLA in that she had worked for the Defendant for more than one (1) year and had worked 1250 hours within the previous 12-month period. 29 U.S.C. § 2611(2)

71.  The Defendant was an employer within the meaning of the FMLA in that it employed more than 50 employees for each working day during each of 20 or more calendar work weeks in the current or preceding calendar year. 29 U.S.C. § 2611(4).

72. Ms. Adams was entitled to a total of 12 workweeks during the 12-month period Defendant interfered with Plaintiff's FMLA rights by failing to provide her with information about her FMLA rights and by terminating her employment shortly after she inquired about taking FMLA leave.

73. Ms. Adams was entitled to a total of 12 workweeks during the 12-month period for her serious medical condition.

74.  Ms. Adams reached out for potential use of FMLA in March of 2024.

75. Ms. Adams reached out for use of FMLA and asked for forms and procedures so that she could apply for FMLA on June 4, 2024.

76. On June 4, 2024, just hours after her request, Ms. Adams was terminated.

77. The Defendant interfered with Ms. Adams use of FMLA as it terminated her instead of providing her with the documentation to apply for leave.

78. The Defendant retaliated against Ms. Adams as it terminated her within hours of her request to use FMLA instead of providing her the forms for her to apply for FMLA.

79. There was close temporal proximity (hours) between Ms. Adams request for FMLA forms and her termination.

80. The stated reason for Ms. Adams termination was false as she did not e-sign a document for her client and she notified her employer she did not e-sign the document which was a fact that could have been easily verified.

81. Most of the other employees had engaged in this conduct, including Ms. Powell herself, yet none of those employees were terminated.

82. Defendant's willful actions violate the FMLA, 29 U.S.C. § 2601 et seq.

83. As a result of the Defendant's willful and unlawful violations of the FMLA, Ms. Adams has been caused to suffer loss of wages or salary, loss of benefits, loss of other compensation, and loss of out-of-pocket expenses.

84. As a result of the Defendant's willful and unlawful violations of the FMLA, the plaintiff is seeking lost wages (both past and future plus prejudgment interest) compensatory damages, liquidated damages, attorney fees and costs.

## COUNT III: AGE DISCRIMINATION (ADEA)

85.  Plaintiff incorporates by reference all preceding paragraphs.

86.  Ms. Adams, at 49 years old, is a member of the protected class under the ADEA.

87. Ms. Adams was qualified for her position as she was already performing the job duties of the position.

88. Defendant discriminated against Plaintiff *because of* her age by making derogatory comments about her age,  using her age as a basis for criticism of her work performance, and treating her differently based on her age.

89. Defendant's actions violate the ADEA, 29 U.S.C. § 621 et seq.

90. As a result of the Defendant's willful and unlawful violations of the Age Discrimination Act, Ms. Adams has been caused to suffer loss of wages or salary, loss of benefits, loss of other compensation, loss of out-of-pocket expenses, and experienced emotional distress to include, but not be limited to anxiety, stress, fear for her future, loss of sleep, embarrassment, humiliation.

91. As a result of the Defendant's willful and unlawful violations of the ADEA, the plaintiff is seeking lost wages (both past and future plus prejudgment interest) compensatory damages, liquidated damages, punitive damages attorney fees and costs.

## COUNT IV: AGE DISCRIMINATION RETALIATION (ADEA)

92. Plaintiff incorporates by reference all preceding paragraphs.

93. Plaintiff engaged in protected activity by opposing age discrimination in the workplace in May of 2024, filing her EEOC Charge on June 1, 2024, and submitting a letter to the compliance attorney alleging Age Discrimination.

94. Defendant retaliated against Plaintiff for opposing age discrimination by increasing its scrutiny of her , not responding to or helping, when necessary, not responding to phone calls and texts, hanging up on Plaintiff when she did get through by phone, nitpicking her work, falsely accusing her of e-signing document, and by terminating her employment.

95. Defendant's actions violate the ADEA, 29 U.S.C. § 621 et seq.

96. As a result of the Defendant's willful and unlawful violations of the Age Discrimination Act, Ms. Adams has been caused to suffer loss of wages or salary, loss of benefits, loss of other compensation, loss of out-of-pocket expenses, and experienced emotional distress to include, but not be limited to anxiety, stress, fear for her future, loss of sleep, embarrassment, humiliation.

97. As a result of the Defendant's willful and unlawful violations of the ADEA, the plaintiff is seeking lost wages (both past and future plus prejudgment interest) compensatory damages, liquidated damages, punitive damages attorney fees and costs.

## COUNT V: DISABILITY DISCRIMINATION - FAILURE TO ACCOMMODATE (ADA)

98. Plaintiff incorporates by reference all preceding paragraphs.

99.  Plaintiff is a qualified individual with a disability under the ADA.

100.     Plaintiff suffers from depression that affects her daily life activities of sleeping, working, concentration, and causes loss of appetite and fatigue.

101.     Plaintiff was able to perform the essential functions of the job with or without accommodations as she was performing the essential functions of the job.

102.     Plaintiff sought the accommodation of FMLA leave for her depression and requested the forms.

103.     Defendant failed to engage in the interactive process and provide reasonable accommodations for Plaintiff's disability when she requested FMLA leave to manage her depression.

104.     Defendant's actions violate the ADA, 42 U.S.C. § 12101 et seq.

105.     As a result of the Defendant's willful and unlawful violations of the ADA, Ms. Adams has been caused to suffer loss of wages or salary, loss of benefits, loss of other compensation, loss of out-of-pocket expenses, and experienced emotional distress to include, but not be limited to anxiety, stress, fear for her future, loss of sleep, embarrassment, humiliation.

106.     As a result of the Defendant's willful and unlawful violations of the ADA, the plaintiff is seeking lost wages (both past and future plus prejudgment interest) compensatory damages, liquidated damages, punitive damages attorney fees and costs.

## COUNT VI- ADA- RETALIATION

107.    Plaintiff incorporates by reference all preceding paragraphs.

108.    Plaintiff engaged in protected activity by opposing unlawful discrimination in the workplace in May of 2024 when she opposed the termination of her sales representative because of her disabling condition.

109.    Plaintiff also engaged in protected activity when she filed her EEOC Charge on June 1, 2024 alleging disability discrimination, and submitting a letter to the compliance attorney alleging disability discrimination.

110.    Plaintiff finally engaged in a protected activity when she requested accommodations for her own disabling condition of depression and complained of disability discrimination on June 4, 2024.

111.    Defendant retaliated against Plaintiff for opposing disability discrimination by increasing its scrutiny of her, not responding to or helping, when necessary, not responding to phone calls and texts, hanging up on Plaintiff when she did get through by phone, nitpicking her work, falsely accusing her of e-signing document, and by terminating her employment.

112.    Defendant's actions violate the ADA, 29 U.S.C. § 621 et seq.

113.    As a result of the Defendant's willful and unlawful violations of the ADA, Ms. Adams has been caused to suffer loss of wages or salary, loss of benefits, loss of other compensation, loss of out-of-pocket expenses, and experienced

emotional distress to include, but not be limited to anxiety, stress, fear for her future, loss of sleep, embarrassment, humiliation.

114.     As a result of the Defendant's willful and unlawful violations of the ADEA, the plaintiff is seeking lost wages (both past and future plus prejudgment interest) compensatory damages, liquidated damages, punitive damages attorney fees and costs.

## VI.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

A. Enter judgment in favor of Plaintiff and against Defendant;

B. Award Plaintiff lost wages both past and future plus prejudgment interest;

C. Award Plaintiff compensatory damages, including back pay, front pay, and

   damages for past and future emotional distress;

C. Award Plaintiff liquidated damages under the ADEA and FMLA;

D. Award Plaintiff punitive damages;

E. Award Plaintiff her reasonable attorneys' fees and costs;

F. Grant Plaintiff such other and further relief as the Court deems just and proper.

### PLAINTIFF REQUESTS A TRIAL BY STRUCK JURY

Respectfully submitted this 16th day of September, 2024.


/s/ Patricia A. Gill
_____
Patricia A. Gill  ASB-0780-I66P
Attorney for the Plaintiff

**OF COUNSEL:**
Barrett & Farahany
2 20th N. St. Suite 900
Birmingham AL 35203
Phone: (205) 789-1906
Email: trish@justiceatwork.com

**PLEASE SERVE DEFENDANT AS FOLLOW:**

**Community Title Loan Inc. doing business as Alabama Title Loans, Inc.**
**Care of Registered Agent**
**CT Corporation System**
**2 North Jackson Street, Suite 605**
**Montgomery, AL 36104**